**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 14-02953 EAG |
| MARIO SAMUEL LEVIS, | CHAPTER 11 |
| DEBTOR. | FILED & ENTERED ON 1/13/2017 |
| _____ | |

**OPINION AND ORDER**

Doral Financial Corporation ("DFC") moves the court for entry of summary judgment denying the objection to its proof of claim filed by debtor Mario Samuel Levis. The debtor's objection to DFC's proof of claim is twofold. First, the debtor alleges that the amounts included in the proof of claim for advancements in legal fees are overstated. Second, the debtor argues that he is not liable for the amounts disbursed by DFC in legal fees alleging that these are contingent, unliquidated, and disputed. DFC's position is that these issues were already addressed and rejected in final judgments entered pre-petition by the state court and that the debtor's objection to the proof of claim is barred by the Rooker-Feldman doctrine and res judicata principles. For the reasons stated below, the court denies DFC's motion for summary judgment.

**I. JURISDICTION**

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of title 11

1

Proceedings to the United States Bankruptcy Court for the District of Puerto Rico, dated July 19, 1984 (Torruella, C.J.).[1] This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. PROCEDURAL BACKGROUND

The debtor filed a petition for relief under chapter 11 of the Bankruptcy Code on April 11, 2014. [Dkt. No. 1.] On August 15, 2014, DFC filed proof of claim number 8 in the amount of $24,440,750.60 for advancement of legal fees and expenses. [Claims Register 8-1.] On February 13, 2015, the debtor filed his objection to the proof of claim. [Dkt. No. 86.] On July 22, 2015, DFC replied to the debtor's objection and then supplemented on September 4, 2015 its objection with certified translations of the exhibits attached thereto. [Dkt. Nos. 109 & 118.] The court scheduled the objection to claim and its answer for a hearing on November 13, 2015. [Dkt. No. 121.] But, at the request of the parties, the court rescheduled said hearing for January, 22, 2016. [Dkt. Nos. 126 & 127.]

On January 19, 2016, the parties filed a joint pretrial report on the objection to claim. [Dkt. No. 134.] On January 22, 2016, the court held a hearing on the objection to claim, and granted DFC 45 days to move for summary judgment, and the debtor 28 days to respond thereafter. [Dkt. No. 137.] The court also set a pretrial conference for July 22, 2016. [Dkt. No. 137.] On January 29, 2016, the debtor supplemented his part of the pretrial report. [Dkt. No. 139.] On February 29, 2016, DFC did likewise. [Dkt. No. 157.]

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to title 11 of the United States Code, 11 U.S.C. §§ 101?1532, as amended. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico. And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

On March 7, 2016, DFC filed a motion for summary judgment, which included a factual background section with proposed uncontested facts. [Dkt. No. 160.] And, on April 4, 2016, the debtor opposed the motion for summary judgment arguing, among other grounds, that DFC failed to submit a separate statement of uncontested facts. [Dkt. No. 164.] On April 29, 2016, DFC filed a separate statement of material facts in support of its motion for summary judgment and a reply to the debtor's opposition. [Dkt. No. 172 & 174.] On May 4, 2016, the debtor opposed DFC's separate statement of facts. [Dkt. No. 176.][2]

On August 19, 2016, the court held a hearing on this contested matter. [Dkt. Nos. 205 & 206.] On August 29, 2016, the debtor requested the court to take judicial notice of certain documents in relation to federal and state court proceedings submitted as supporting exhibits to his opposition. [Dkt. No. 209.]

### III. UNCONTESTED FACTS

The following facts are uncontested pursuant to Rule 56 and Local Civil Rule 56, made applicable to these proceedings by Bankruptcy Rules 9014(c) and 7056 and Local Bankruptcy Rules 1001-1(b) and (d).

The debtor is a former Senior Executive Vice President and Treasurer of DFC. [DFC's Factual Background/Proposed Statement of Uncontested Facts ("DFC's SUF") at ¶ 4, Dkt. No. 160; Debtor's reply to DFC's SUF ("Debtor's reply") at ¶ 4, Dkt. No. 164, p. 5.] The debtor resigned from his position in August 2005, after an investigation by the Securities and

---

[2] While the debtor is correct in arguing that DFC failed to comply with Local Civil Rule 56 and its anti-ferreting provisions when it moved for summary judgment at docket number 160, the court will consider DFC's original statement of material facts included at docket number 160 because the debtor responded at docket number 164 to the proposed facts contained therein.

Exchange Commission and the initiation of civil actions filed against him and other directors and officers of DFC. [DFC's SUF at ¶ 5, Dkt. No. 160; Debtor's reply at ¶ 5, Dkt. No. 164, p. 5.] The debtor retained the services of the firms of Greenberg Traurig; Stephen E. Kaufman, P.G.; and Black, Srebnick, Kornspan & Stumpf to assist him in the civil actions and subsequent criminal proceedings, and requested that DFC advance the payment of the fees of these professionals. [DFC's SUF at ¶ 6, Dkt. No. 160; Debtor's reply at ¶ 6, Dkt. No. 164, p. 5.]

The debtor executed an undertaking to repay the fees and expenses disbursed by DFC in his defense if it was ultimately determined that he was not entitled to be indemnified under Article IX of the bylaws of DFC or pursuant to Puerto Rico Law. [DFC's SUF at ¶ 26, Dkt. No. 160; Debtor's reply at ¶ 26, Dkt. No. 164, p. 6; DFC's Exhibit 2, Dkt. No. 160, p. 48.] The disbursements made by DFC for the defense of the debtor were made pursuant to the dispositions of Section 1 of Article IX of DFC's By-laws and the undertaking agreement signed by the debtor. [DFC's SUF at ¶ 7, Dkt. No. 160; Debtor's reply at ¶ 7, Dkt. No. 164, p. 5.]

On March 4, 2008, the debtor was indicted on one count of securities fraud and four counts of wire fraud under case number 08-cr-181 (TGP) in the United States District Court for the Southern District of New York. [DFC's SUF at ¶ 8, Dkt. No. 160; Debtor's reply at ¶ 8, Dkt. No. 164, p. 5.] DFC paid all invoices for attorney fees submitted by the debtor for about four years. [DFC's SUF at ¶ 9, Dkt. No. 160; Debtor's reply at ¶ 9, Dkt. No. 164, p. 5.] From May 2009 onward, DFC did not advance any attorney fees per invoices submitted by the debtor. [DFC's SUF at ¶ 10, Dkt. No. 160; Debtor's reply at ¶ 10, Dkt. No. 164, p. 5.]

After filing a civil suit in the Supreme Court of New York and multiple exchanges between DFC, the debtor, and their attorneys, DFC resumed paying the pending invoices

4

presented by the debtor, but stopped doing so again after April 25, 2011. [DFC's SUF at ¶ 11, Dkt. No. 160; Debtor's reply at ¶ 11, Dkt. No. 164, p. 5.]

On April 29, 2010, after a trial, a jury found the debtor guilty of count one (securities fraud), and counts three and five (wire fraud) of the indictment. [DFC's SUF at ¶ 12, Dkt. No. 160; Debtor's reply at ¶ 12, Dkt. No. 164, p. 5.] On November 19, 2010, the District Court for the Southern District of New York sentenced the debtor to a term of 60 months imprisonment on those three counts. [DFC's SUF at ¶ 13, Dkt. No. 160; Debtor's reply at ¶ 13, Dkt. No. 164, p. 5.] The court also ordered the debtor to restitute DFC the amount of $1,894,262.00 as part of his sentence. [Id.]

On November 24, 2010, the debtor appealed his conviction and sentence to the U.S. Court of Appeals for the Second Circuit. [DFC's SUF at ¶ 14, Dkt. No. 160; Debtor's reply at ¶ 14, Dkt. No. 164, p. 5.] On July 18, 2012, the court of appeals confirmed the debtor's conviction on count one for securities fraud and count five for wire fraud of the indictment. [DFC's SUF at ¶ 15, Dkt. No. 160; Debtor's reply at ¶ 15, Dkt. No. 164, p. 6.] But, vacated the conviction on count three of the indictment and ordered a new trial on that count. [Id.]

On November 21, 2012, the debtor filed a petition for writ of certiorari before the U.S. Supreme Court seeking review of the appellate decision. [DFC's SUF at ¶ 16, Dkt. No. 160; Debtor's reply at ¶ 16, Dkt. No. 164, p. 6.] And on April 29, 2013, the U.S. Supreme Court denied the petition for writ of certiorari. [DFC's SUF at ¶ 17, Dkt. No. 160; Debtor's reply at ¶ 17, Dkt. No. 164, p. 6.]

Subsequently, the debtor's case was remanded to the district court for a new trial on count three. [DFC's SUF at ¶ 18, Dkt. No. 160; Debtor's reply to SUF at ¶ 18, Dkt. No. 164, p.

6.] But, on October 3, 2013, the district court entered an order dismissing count three. [Id.]

Finally, on February 21, 2014 the district court entered an amended judgment against the

debtor reducing his term of imprisonment to 48 months for his conviction on counts one for

securities fraud and five for wire fraud. [DFC's SUF at ¶ 18, Dkt. No. 160; Debtor's reply at ¶

18, Dkt. No. 164, p. 6; DFC's Exhibit 5, Dkt. No. 160, pp. 86-91.] He was also ordered to restitute

DFC the amount of $1,894,262.00 as part of his criminal sentence. [Id.]

On April 12, 2012, while the debtor's criminal conviction was pending at the court of

appeals, the debtor filed a civil suit against DFC in the Puerto Rico Court of First Instance.

[DFC's SUF at ¶ 19, Dkt. No. 160; Debtor's reply at ¶ 19, Dkt. No. 164, p. 6.] In the Puerto Rico

complaint, the debtor claimed damages for breach of contract and requested the court to order

DFC's specific performance with its alleged obligations under the corporate by-laws to advance

fees. [DFC's SUF at ¶ 19, Dkt. No. 160; Debtor's reply at ¶ 19, Dkt. No. 164, p. 6.]

On April 19, 2013, after both parties filed dispositive motions, the Court of First

Instance entered summary judgment dismissing the complaint filed by the debtor. [DFC's SUF

at ¶ 20, Dkt. No. 160; Debtor's reply at ¶ 20, Dkt. No. 164, p. 6; DFC's Exhibit 6, Dkt. No. 160,

p. 91-120.] Thereafter, the debtor appealed the judgment to the Puerto Rico Court of Appeals,

which affirmed the judgment on September 30, 2013. [DFC's SUF at ¶¶ 21-22, Dkt. No. 160;

Debtor's reply at ¶¶ 21-22, Dkt. No. 164, p. 6; DFC's Exhibit 7, Dkt. No. 160, p. 123-159.]

On November 25, 2013, the debtor filed a petition for writ of certiorari in the Supreme

Court of Puerto Rico seeking to reverse the judgment entered by the Court of Appeals. [DFC's

SUF at ¶ 23, Dkt. No. 160; Debtor's reply at ¶ 23, Dkt. No. 164, p. 6; DFC's Exhibit 10, Dkt. No.

160, pp. 304-308.] The petition for certiorari was denied on April 4, 2014, and notice the denial

was given on April 8, 2014. [DFC's SUF at ¶ 23, Dkt. No. 160; Debtor's reply at ¶ 23, Dkt. No. 164, p. 6; DFC's Exhibit 8, Dkt. No. 160, p. 160-162.]

On April 11, 2014, the debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. [Dkt. No. 1.]

## IV. SUMMARY JUDGMENT STANDARD

The standard for summary judgment is well-known. Pursuant to Rule 56, made applicable to these proceedings by Bankruptcy Rules 7056 and 9014(c), summary judgment is available "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). The moving party bears the burden of showing that "no genuine issue exists as to any material fact" and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. P.R. Tel. Co., 110 F. 3d 174, 178 (1st Cir. 1997).

Once a properly supported motion has been presented before the court, the opposing party "can shut down the machinery only by showing that a trialworthy issue exists" that would warrant the court's denial of the motion for summary judgment. McCarthy v. Northwest Airlines, 56 F.3d 313, 315 (1st Cir. 1995). For issues where the opposing party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Id. However, not every factual dispute is sufficient to frustrate summary judgment; the contested fact must be material and the dispute over it must be genuine. Id. An issue is

"genuine" if it could be resolved in favor of either party. A fact is "material" if it is potentially outcome-determinative. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (citations omitted). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted). However, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be) . . . ." Greenburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987); see also Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury.") (quoting Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 34 (1st Cir. 1990)).

### V. APPLICABLE LAW AND DISCUSSION

#### i. The amount claimed by DFC in proof of claim number 8

First, the debtor contends that there is a genuine controversy of fact as to the amounts owed to DFC, if any, given that the supporting documents submitted with proof of claim number 8 show that the amount advanced to debtor for legal fees is actually $23,378,365.90, not $24,440,750.60. But, DFC contends that the amount claimed is in fact understated and that

debtor failed to include some entries in his objection that were included in DFC's proof of claim. The court examined the proof of claim and after adding all of the amounts included per paragraph, as disbursed by DFC to the debtor, the amount claimed by DFC in its proof of claim is actually understated as follows:

| POC ¶ | Date of payment | Amount |
| --- | --- | --- |
| 7 | 11/1/2005 | $31,084.00 |
| 7 | 11/16/2005 | $74,363.78 |
| 7 | 11/30/2005 | $105,773.30 |
| 7 | 12/29/2005 | $103,429.63 |
| 7 | 3/14/2006 | $150,727.27 |
| 7 | 5/26/2006 | $198,427.40 |
| 7 | 5/26/2006 | $164,636.65 |
| 7 | 5/26/2006 | $269,840.58 |
| 7 | 6/30/2006 | $163,290.08 |
| 7 | 6/30/2006 | $75,562.75 |
| 7 | 9/28/2006 | $158,111.06 |
| 7 | 8/24/2006 | $154,072.47 |
| 7 | 10/3/2006 | $202,978.00 |
| 7 | 12/26/2006 | $217,284.53 |
| 7 | 12/14/2006 | $204,715.32 |
| 7 | 2/6/2007 | $77,116.32 |
| 7 | 3/21/2007 | $63,000.63 |
| 7 | 4/19/2007 | $144,826.70 |
| 7 | 6/13/2007 | $118,387.21 |
| 7 | 6/13/2007 | $166,413.99 |
| 7 | 6/26/2007 | $179,146.77 |
| 7 | 9/18/2007 | $150,629.54 |
| 7 | 9/18/2007 | $333,030.39 |
| 12 | 11/29/2007 | $225,757.99 |
| 13 | 10/2007-12/2007 | $448,296.08 |
| 19 | 11/29/2007 | $225,757.99 |
| 19 | 12/14/2007 | $230,478.87 |
| 19 | 12/14/2007 | $234,993.28 |
| 19 | 1/25/2008 | $68,421.19 |
| 19 | 1/25/2008 | $69,361.31 |
| 19 | 2/21/2008 | $249,381.60 |
| 19 | 3/28/2008 | $262,016.23 |
| 19 | 4/17/2008 | $131,069.74 |

| POC ¶ | Date of payment | Amount |
|---|---|---|
| 19 | 5/2/2008 | $238,084.37 |
| 19 | 6/5/2008 | $246,425.89 |
| 19 | 7/1/2008 & 9/19/2008 | $354,530.45 |
| 19 | 8/14/2008 & 9/19/2008 | $280,407.55 |
| 19 | 9/11/2008 | $381,551.14 |
| 19 | 10/6/2008 | $300,644.84 |
| 19 | 11/5/2008 | $360,042.07 |
| 19 | 12/10/2008 | $442,056.13 |
| 19 | 1/8/2009 | $404,005.57 |
| 19 | 2/10/2009 | $363,817.61 |
| 19 | 3/9/2009 | $572,910.14 |
| 19 | 4/9/2009 | $565,724.28 |
| 19 | 5/11/2009 | $517,688.65 |
| 29 | 7/15/2009 | $300,000.00 |
| 29 | 7/17/2009 | $300,000.00 |
| 36 | 10/22/2009 | $1,000,000.00 |
| 37 | 11/4/2009 | $500,000.00 |
| 38 | 11/12/2009 | $500,000.00 |
| 39 | 11/19/2009 | $300,000.00 |
| 42 | 12/17/2009 | $734,680.22 |
| 43 | 12/17/2009 | $734,680.22 |
| 44 | 2/3/2010 | $706,527.23 |
| 44 | 2/12/2010 | $695,078.51 |
| 44 | 3/18/2010 | $628,853.96 |
| 44 | 4/9/2010 | $362,191.00 |
| 44 | 5/3/2010 | $822,789.23 |
| 44 | 5/17/2010 | $523,255.52 |
| 44 | 6/7/2010 | $1,650,053.81 |
| 44 | 6/25/2010 | $108,281.85 |
| 44 | 6/28/2010 | $1,375.00 |
| 44 | 7/16/2010 | $95,153.04 |
| 44 | 7/22/2010 | $1,204,236.60 |
| 44 | 8/13/2010 | $100,073.86 |
| 44 | 9/10/2010 | $61,116.72 |
| 44 | 9/23/2010 | $1,059,831.40 |
| 44 | 10/18/2010 | $80,000.00 |
| 44 | 11/18/2010 | $97,678.08 |
| 44 | 12/8/2010 | $194,380.03 |
| 44 | 1/28/2011 | $346,339.26 |

| POC ¶ | Date of payment | Amount |
|---|---|---|
| 44 | 2/18/2011 | $315,811.12 |
| 44 | 2/24/2011 | $52,455.50 |
| 44 | 3/11/2011 | $452,634.22 |
| 44 | 4/25/2011 | $44,672.55 |
| | TOTAL | $24,652,420.27 |

The above table shows that the amount claimed in DFC's proof of claim is indeed understated to the benefit of the debtor. As such, there is no genuine issue of fact regarding the amount claimed by DFC that would prevent the court from entering summary judgment.

**ii. The Rooker-Feldman doctrine**

The Rooker-Feldman doctrine comes from two Supreme Court decisions: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). "Rooker held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the U.S. Supreme Court and is beyond the original jurisdiction of federal district courts," and "Feldman held that this jurisdictional bar extends to particular claims that are 'inextricably intertwined' with those a state court has already decided." Schwartz v. Schwartz (In re Schwartz), 409 B.R. 240, 247 n.4 (B.A.P. 1st Cir. 2008). Rooker-Feldman bars parties who lost in state court from "seeking review and rejection of that judgment" in federal court. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005). In the First Circuit, the Rooker-Feldman doctrine applies in district and bankruptcy courts. Schwartz, 409 B.R. at 247-48.

Rooker-Feldman applies when a plaintiff, here the debtor, insists that a federal court review and reject a final state court judgment. A state court judgment is sufficiently final for Rooker-Feldman purposes when the state proceedings have ended. Exxon Mobil Corp., 544

11

U.S. at 291.  "If federal litigation is initiated before state proceedings have ended, then -- even if the federal plaintiff expects to lose in state court and hopes to win in federal court -- the litigation is parallel, and the Rooker-Feldman doctrine does not deprive the court of jurisdiction." Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17, 24-25 (1st Cir. 2005).  State court proceedings have ended "when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved . . ." or when "the state action has reached a point where neither party seeks further action. . . ." Id. at 24.

DFC argues that the Rooker-Feldman doctrine warrants the denial of the debtor's objection to its proof of claim.  It asserts that the Puerto Rico courts already decided that the debtor had no right to continued advancements of attorney fees and disbursements for the defense of the criminal charges levied against him and subsequent appeals of his conviction because he had failed to provide adequate proof that the amounts claimed were reasonable as required under DFC's by-laws and the undertaking. [Dkt. No. 160, pp. 10-11.]  And, that upon the debtor's conviction becoming final, the Puerto Rico courts also ruled that DFC had the right to demand restitution of all the amounts advanced to the debtor as attorney fees for his defense. [Id.]

The debtor "admits that while dissatisfied with the result reached by the Puerto Rico courts with respect to his right to advancement, that issue is res judicata." [Dkt. No. 164, p. 13.] But, he argues that Rooker-Feldman should not apply to the indemnity issue for several reasons. First, the allowance of DFC's claim under section 502 is a question of federal bankruptcy law, and DFC's claimed right of restitution was never raised before the Puerto Rico

12

courts. [Id. at 9.] Secondly, the debtor's right to absolute indemnity on the counts upon which he was successful was not ruled upon by the Puerto Rico courts. [Id.] Third, the Court Appeals invited DFC to file a separate cause of action related to the question of indemnity. [Id. at 11.] And finally, the denial by the Puerto Rico Supreme Court of the writ of certiorari was not final when the debtor filed for bankruptcy. [Id. at 12.]

While the debtor is correct in asserting that the time for him to file a motion to reconsider the Puerto Rico Supreme Court ruling had not expired when his bankruptcy petition was filed, "[s]ection 362 stays appellate proceedings in actions originally brought 'against' the debtor." Heck-Dance v. Cardona-Jimenez, 102 Fed. Appx. 171, 172 (1st Cir. 2004) (quoting Simon v. Navon, 116 F.3d 1, 4 (1st Cir. 1997)).[3] The automatic stay under section 362 triggered by the filing of his petition did not prevent the debtor from filing a motion for reconsideration in the Puerto Rico Supreme Court. As such, the state court proceeding had ended for Rooker-Feldman purposes because it reached a point where neither party sought further action. The judgment is now final and firm as it is no longer appealable or subject to reconsideration. Suarez Morales v. Estado Libre Asociado de Puerto Rico, 162 P.R. Dec. 43, 62 (2004).

But, a plain reading of the judgments issued by the Puerto Rico Court of First Instance and the Court of Appeals shows that the Court of First Instance ruled only on DFC's obligation

---

[3] The debtor filed his bankruptcy petition on April 11, 2014, that is three days after he received notice of the Supreme Court resolution dated April 4 and noticed on April 8 denying the issuance of the writ of certiorari. [DFC's Exhibit 8, Dkt. No. 160, p. 160-162.] Under Rules 45(a) and (b) of the Supreme Court of Puerto Rico, the parties have ten business days to file motions to reconsider a ruling, and the Supreme Court does not issue the mandate to the lower court until those ten days have expired. See, P.R. Laws Ann. tit. 4A Ap. XXI-B, R. 45(a) & (b).

13

to advance legal fees to the debtor.[4]  Rooker-Feldman cannot be applied to the objection to proof of claim given that the basis for said objection–whether DFC is entitled to reimbursement of the monies advanced for legal fees–was not the subject of the state court proceeding. "Indemnification and advancement are two distinct and different legal rights, with the latter being a narrower and more provisional subset of the former." Majkowski v. Am. Imaging Mgmt. Servs., LLC, 913 A.2d 572, 586 (Del. Ch. 2006).

The Court of First Instance's judgment summarily dismissing the debtor's complaint clearly states that the complaint was for "the alleged breach of [DFC's] obligation to prepay legal fees incurred by plaintiff" and that the dispute in the case was "limited to deciding whether plaintiff has an absolute and unrestricted right to have defendant continue disbursing unconditionally the million-dollar amounts invoiced corresponding to his alleged legal expenses, without said party having to show the reasonableness of these expenses." [Dkt. No. 160, Exhibit 6, pp. 1 & 14.]

The Court of Appeals' judgment affirming the dismissal states that the controversy before it "revolves around a contract that allows a corporation to advance the payment of fees for legal representation of an official accused of fraud against the interests of the entity." [Dkt. No. 160, Exhibit 7, p. 1.] And, the Court of Appeals outlined the holding of the Court of First Instance as follows:

---

[4]The parties only submitted the judgments issued by the Puerto Rico Court of First Instance and Court of Appeals, the debtor's petition for writ of certiorari in the Puerto Rico Supreme Court, and that Court's ruling denying the same. [Docket No. 160, Exhibits 6, 7, 10 & 11; Docket No. 219, Exhibits B & C.] No other pleading from the state court proceeding was submitted to this court.

> [The Court of First Instance] concluded that pursuant to the corporate By-Laws, Levis did not have an absolute right to an indemnity or advance for the expenses incurred in legal representation for his defense, because he had not demonstrated the reasonableness of the disbursements requested from Doral. It dismissed the complaint in its entirety. It resolved that Doral had complied with the contractual obligations subscribed in the corporate By-Laws. It determined that the payment in advance of the legal expenses incurred by a corporate official is governed by the standard of reasonability that the General Law of Corporations establishes. Finally, it provided that even when the parties had not expressly agreed upon Levis' duty to justify the reasonableness of the legal expenses requested from Doral, pursuant to the principle of good faith, it had to be done.

[Dkt. No. 160, Exhibit 7, pp. 14-15.]

DFC argues that the Court of Appeals took judicial notice of debtor's criminal conviction becoming final and unappealable after the Court of First Instance issued its judgment and, as a result, declared that the debtor is obligated to reimburse DFC all the monies advanced for legal fees. [Dkt. No. 160, p. 11.] Specifically, the Court of Appeals stated the following regarding DFC's right to reimbursement:

> Levis' criminal actions violated the principle of contractual good faith. Also, they violated the duty of diligence expected from the officials of a corporation. For this reason, this court should intervene, declare the agreement of payment dissolved and also grant Doral's right to carry out efforts for the restitution of what was paid.
>
> . . . .
>
> According to the law and the personal guarantee that Levis signed, it is time to terminate the authorized advance and return to Doral all the amounts advanced for the payment of fees in the cases in which Levis was charged of fraudulent actions against Doral. He promised as such: "I undertake to repay such fees and expenses if it is ultimately determined that I am not entitled to be indemnified under Article IX of the By-Laws of Doral Financial Corporation or pursuant to Puerto Rico law." We resolve that it is adjudicated in a final and firm manner that Levis did not have a right to the advances, disbursements or indemnities received.
>
> Pursuant to what is set forth, the appealed judgment is modified to provide that plaintiff Mario Samuel Levis does not have a right, as ex-director

15

of Doral Financial Corporation, to the advances in payment of attorneys' fees he claims and not either the ones that he has already received. **Doral Financial Corporation should file the pertinent actions to, in accordance to the law and guarantee subscribed by plaintiff, recuperate the advances for legal representation expenses that were paid.**

[Dkt. No. 160, Exhibit 7, pp. 35-36 (emphasis added).]

But, the language that the debtor had no right to the advances, disbursements or indemnities received is of an advisory nature or dicta. The fact that the Court of Appeals stated that DFC needed to file a separate action to recover those advances confirms as much. Dictum are "observations relevant, but not essential, to the determination of the legal questions then before the court" and "constitutes neither the law of the case nor the stuff of binding precedent." Dedham Water Co. v. Cumberland Farms Dairy, Inc., 972 F.2d 453, 459 (1st Cir. 1992). See, Ortiz Rivera, v. Panel sobre el Fiscal Especial Independiente, 155 P.R. Dec. 219, 252-53 (2001) (defining dictum as judicial statements that are excessive and unnecessary to the decision of a case). See also, Díaz Carrasquillo v. García Padilla, 191 P.R. Dec. 97, 154 (2014) (stating under the rules of justiciability, courts are banned from issuing advisory opinions made in a vacuum, abstractly, or under a speculative hypothesis). Contrary to what DFC suggests, the Court of Appeals dictum does not have a preclusive effect upon DFC's rights because these statements went beyond the issues presented to the Court of First Instance and were not a determination on the merits of the indemnity issue.

DFC contends that the debtor already litigated the indemnity issue because his objection to the proof of claim is substantially the same as his petition for writ of certiorari before the Puerto Rico Supreme Court. [Dkt. No. 160, p. 17.] The debtor indeed challenged the Court of Appeals judgment when he filed his writ of certiorari and presented his due

16

process arguments against the dicta on the indemnity issue. However, the denial of the writ by the Supreme Court does not constitute a decision on the merits. See, Pueblo de P.R. v. Cardona López, 2016 T.S.P.R. 209, ___ P.R. Dec. ___ (2016), 2016 WL 6237922 at *6 (holding that a denial of certiorari does not imply the Court's position on the merits). See also, Caban v. JR Seafood, 132 F. Supp. 3d 274, 281 n. 6 (D.P.R. 2015) (noting that a Puerto Rico Supreme Court resolution denying a petition of certiorari is not binding precedent because the court never had jurisdiction to entertain the issue).

### iii. Res judicata

Under the full faith and credit statute, a state-court judgment has the same preclusive effect in bankruptcy court as in that state's court. 28 U.S.C. § 1738. "The doctrines of res judicata and collateral estoppel under both federal and state court jurisprudence preclude relitigation of claims and/or issues which have been or could have been litigated in a prior judicial action for which judgment has been rendered." Sistemas Integrados De Salud Del Suroeste, Inc. v. Medical Educ. & Health Servs. (In re Medical Educ. & Health Servs.), 474 B.R. 44, 54 (D.P.R. 2012) (quoting Muñoz Rivera, et al. v. Walgreens Co., et al., 428 F.Supp.2d 11, 19 (D.P.R.2006)). "Res judicata applies when the following exist: '(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions.'" Gonzalez-Piña v. Guillermo Rodriguez, 407 F.3d 425, 429 (1st Cir. P.R. 2005) (quoting Breneman v. United States ex rel. F.A.A., 381 F.3d 33, 38 (1st Cir. 2004)).

Res judicata cannot be applied to the debtor's objection to DFC's proof of claim for the same reasoning that Rooker-Feldman does not apply. The cause of action asserted in the state

17

court proceeding is separate and independent from the one being asserted in the objection to proof of claim.

### iv. Claim process

Lastly, DFC argues that should this court find that Rooker-Feldman and res judicata are not applicable, that it acknowledge DFC's right of payment and determine the amount that should be allowed. But, the court cannot resolve on this summary-judgment record what amounts, if any, DFC is entitled to reimbursement from the debtor. First, the debtor may have a legitimate claim to indemnity of the fees in connection with the counts on which his legal defense prevailed. Green v. Westcap Corp. of Delaware, 492 A.2d 260, 265 (Del. Super. Ct. 1985). And, the court does not have sufficient facts or documents before it to bifurcate the legal fees.

Secondly, in order to resolve an indemnity claim, corporate law requires the court to assess whether the debtor "acted in good faith and in a manner that he reasonably believed was in the best interests of the company." Majkowski, 913 A.2d at 586. And, matters of intent are not appropriate for summary judgment. See Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury.") (quoting Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 34 (1st Cir. 1990)).

### VI. CONCLUSION

For the reasons stated above, the court finds that the facts in this case do not warrant the application of the Rooker-Feldman doctrine or res judicata principles to the debtor's objection to the proof of claim. Also, Doral Financial Corporation has not met its burden to

show that there is no genuine issue of material fact that warrants the entry of summary judgment in its favor. The motion for summary judgment [at Docket No. 160] is hereby denied.

In Ponce, Puerto Rico, this 13th day of January 2017.

*Edward A. Godoy*

Edward A. Godoy
U.S. Bankruptcy Judge